Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 6763 | **DATE** | 5/13/2004 |
| **CASE TITLE** | Weyneth vs. Micromatic Spring and Stamping, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Micromatic's Motion for Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Micromatic's Motion for Summary Judgment brought pursuant to Federal Rule of Civil Procedure is granted. See attached. The Clerk shall enter judgment pursuant to Federal Rule of Civil Procedure 58. It is so ordered.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | MAY 17 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| X | Docketing to mail notices. | | docketing deputy initials | 17 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ERNST WEYNETH, | ) |
| Plaintiff, | ) No. 02 C 6763 |
| v. | ) Honorable Charles R. Norgle |
| MICROMATIC SPRING AND STAMPING, INC., an Illinois corporation, | ) |
| Defendant. | ) |

**DOCKETED**
**MAY 1 7 2004**

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Plaintiff, Ernst Weyneth ("Weyneth") brings this cause of action against Micromatic Spring and Stamping, Inc. ("Micromatic") alleging disparate treatment in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* Before the court is Micromatic's Motion for Summary Judgment brought pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the motion is granted.

## I. BACKGROUND[1]

Micromatic manufactures springs and other parts that are used as components in items manufactured by other companies. Walter Prociuk ("Prociuk") is Micromatic's Vice President, and

---

[1] The court takes the undisputed facts from the parties' Local Rule 56.1 Statements, and notes disputed facts within the text. Local Rule 56.1 is designed to conserve judicial time and resources. See Bordelon v. Chicago School Reform Bd. of Trustees, 233 F.3d 524, 527 (7th Cir. 2000) (stating that "[t]hese rules assist the court by organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side proposed to prove a disputed fact with admissible evidence" (citation omitted)); Malec v. Sanford, 191 F.R.D. 581, 582-87 (N.D. Ill. 2000) (discussing at length the requirements of Local Rule 56.1). Given the importance of Local Rule 56.1, the court has the discretion to either strictly apply or overlook violations of Local Rule 56.1. See Metropolitan Life Ins. Co. v. Johnson, 297 F.3d 558, 562 (7th Cir. 2002); Bordelon, 233 F.3d at 527. In this instance, both parties are admonished for their failure to comply with Local Rule 56.1. However, the parties' violations of Local Rule 56.1 do not materially affect the court's ability to decide the dispositive issue in this case, and the court will overlook both parties' violations of Local Rule 56.1 and proceed to decide this case with justice and fairness to the parties.

17

the relevant decision-maker in this case. In July of 1994, Weyneth interviewed with Micromatic for a position as an inspector in the Quality Control department. Following the interview, Prociuk offered Weyneth the job, which he accepted. At the time Weyneth was hired he was 56 years of age.

Throughout his employment with Micromatic, Weyneth's basic job duties as an inspector in the Quality Control department remained the same, though his title was changed on occasion. The general job duties of an inspector included ensuring that manufactured parts met the specifications for manufacture prior to shipment. Weyneth met Micromatic's reasonable expectations of him, and was never disciplined. Weyneth was a good employee, worked well with other employees and found the general work atmosphere to be good.

Seven years after he was hired, in the spring of 2001, there were a total of three full-time employees, including Weyneth, and one part-time employee in the Quality Control department. The two other full-time employees were Maria Kolpa ("Kolpa"), age 38, and Bogdan Korycki ("Korycki"), age 44, and the part-time employee was Kathleen Freeman ("Freeman"), age 38. Kolpa was transferred to the Quality Control department in 1998, prior to which time she had worked as an employee of Micromatic in various other departments for a number of years. Aside from her duties as an inspector in the Quality Control department, Kolpa performed various other duties in the factory, including sorting. Korycki was hired by Micromatic in October of 2000. Aside from his duties as an inspector in the Quality Control department, Korycki performed various other duties in the factory, including painting and maintenance. Freeman, the part-time employee, was hired by Micromatic in June of 1999. Aside from her duties as an inspector in the Quality Control department, Freeman performed various other duties in the factory, including sorting and filing paperwork. It is undisputed that Weyneth had more experience and performed better as an inspector

2

than the other employees in the Quality Control department; however, he lacked experience in other departments of Micromatic's factory.

In the spring of 2001, Prociuk decided that it would be necessary to effect a reduction in force ("RIF") from Micromatic's various departments as a result of a decrease in Micromatic's business over the past year. Prociuk chose lay off one employee from the Quality Control department, Weyneth. On May 1, 2001, Prociuk called Weyneth into his office and told him that he was being let go as a result of a decrease in Micromatic's business. Also on May 1, 2001, Prociuk laid off four other employees from Micromatic's various departments: Bogumila Siewa, age 48; Tadeusz Zagrodny, age 37; Alberto Landeros, age 25; and Luis Castillo, age 49. Throughout the remainder of 2001, Prociuk laid off an additional ten employees from Micromatic's various departments.

Weyneth was age 62 at the time of his lay off. According to Weyneth, he was laid off based upon his age. According to Micromatic, he was laid off because all other employees within the Quality Control department had training and experience in other departments within the factory, whereas Weyneth did not.

Weyneth timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), and received a Right to Sue letter on September 5, 2002. Thereafter, Weyneth filed this Complaint alleging that Micromatic discriminated against him in violation of the ADEA, 29 U.S.C. § 621 *et seq*. Micromatic has filed a motion for summary judgment, which is fully briefed and ready for ruling.

## II. LEGAL STANDARDS

### A. *Summary Judgment*

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden to prove that no genuine issue of material fact exists. See Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Once the moving party shows that there is no genuine issue of material fact, the burden shifts to the non-moving party to designate specific facts showing that there is a genuine issue for trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

The non-moving party cannot rest on the pleadings alone, but must identify specific facts that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Murphy v. ITT Technical Services, Inc., 176 F.3d 934, 936 (7th Cir. 1999); see also Fed. R. Civ. P. 56(e). "Conclusory allegations alone cannot defeat a motion for summary judgment." See Thomas v. Christ Hosp. and Medical Center, 328 F.3d 890, 893-94 (7th Cir. 2003) (citing Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 888-89 (1990)).

Local Rule 56.1 requires both the moving and non-moving parties to submit a statement of material facts, including "specific references to the affidavits, parts of the record, and other supporting materials relied upon." Local Rule 56.1(a)(3); Local Rule 56.1(b)(3)(B). Further, evidence submitted at summary judgment must ultimately be admissible at trial under the Federal Rules of Evidence. See Woods v. City of Chicago, 234 F.3d 979, 988 (7th Cir. 2000). Thus, all facts not properly supported by the record evidence must be disregarded. Brasic v. Heinemunn's, Inc., 121 F.3d 281, 284 (7th Cir.1997).

The court views the record evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. See Fed. R. Civ. P. 56(c). "In the light most

4

favorable" simply means that summary judgment is not appropriate if the court must make a "choice of inferences." See Wolf v. Buss (America) Inc., 77 F.3d 914, 922 (7th Cir. 1996). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

*B. ADEA*

The ADEA prohibits an employer from "discharg[ing] any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1) (2003). "When a plaintiff alleges disparate treatment, 'liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision.'" Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141 (2000) (quoting Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993)). In other words, " the plaintiff's age must have actually played a role in the employer's decision-making process and had a determinative influence on the outcome." Id.; see also Schuster v. Lucent Technologies, Inc., 327 F.3d 569, 573 (7th Cir. 2003). A claim of discrimination in violation of the ADEA may be proven through direct evidence of the employer's discriminatory motive, or through the indirect, burden-shifting approach articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). See O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 311 (1996) (assuming that the McDonnell Douglas burden-shifting framework applies to ADEA age-discrimination cases); Adreani v. First Colonial Bankshares Corp., 154 F.3d 389, 395 n.2 (7th Cir. 1998) (same).

Because there is no direct evidence of age discrimination in this case, Weyneth has proceeded using the McDonnell Douglas burden-shifting framework. Under McDonnell Douglas, in order to permit this case to go to a jury, it is Weyneth's initial burden to make out a *prima facie* case. In

5

order to make out a *prima facie* case of discriminatory termination under the ADEA, Weyneth is required to present enough evidence to create a triable issue of fact on each of the following elements: 1) he is a member of the class protected by the statute; 2) he reasonably performed to his employer's expectations; 3) he was terminated; and 4) the position remained open or he was replaced by someone substantially younger. See, e.g., Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617 (7th Cir. 2000). "Where, as here, an employee is terminated pursuant to a reduction in force, the fourth element can also be satisfied by showing that similarly situated, substantially younger employees were retained." Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 472 (7th Cir. 2002) (citing Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 693 (7th Cir. 2000).

If Weyneth can make out a *prima facie* case, the burden would shift to Micromatic to articulate a legitimate non-discriminatory reason for terminating Weyneth. If Micromatic is able to do so, then Weyneth must present sufficient evidence to convince a rational jury that Micromatic's justifications were pretextual. See Lesch, 282 F.3d at 473 (citing Beatty v. Wood, 204 F.3d 713, 717 (7th Cir. 2000)). To show pretext in a RIF case, Weyneth must establish that an improper motive tipped the balance in favor of discharge or that Micromatic did not honestly believe in the reasons it gave for firing him. See Schuster, 327 F.3d at 574. Despite the well-known burden-shifting nature of this approach, "'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" Testerman, 98 F.3d at 303 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)); Jackson v. E.J. Brach Corp., 176 F.3d 971, 982 (7th Cir. 1999).

### III. DISCUSSION

As the Seventh Circuit has stated: "It is not always necessary to march through this entire

6

process if a single issue proves to be dispositive." Lesch, 282 F.3d at 473 "Here, as is often true, that issue is pretext or the lack thereof." Id. Assuming *arguendo* that Weyneth can establish the existence of a *prima facie* case, Micromatic has indicated a legitimate business justification for Weyneth's termination - Weyneth was laid off because all other employees within the Quality Control department had training and experience in other departments within the factory, whereas Weyneth did not.

To meet his burden of showing pretext, Weyneth must establish that an improper motive tipped the balance in favor of discharge or that Micromatic did not honestly believe in the reasons it gave for firing him. See Schuster, 327 F.3d at 574. "Pretext may be proven directly with evidence that an employer was more likely than not motivated by a discriminatory reason, or indirectly by evidence that the employer's explanation is not credible." Id. (internal quotations and citation omitted). Weyneth presents no direct evidence of pretext, and proceeds to attempt to demonstrate pretext indirectly.

"A plaintiff-employee may proceed indirectly by attempting to show that the employer's 'ostensible justification is unworthy of credence' through evidence 'tending to prove that the employer's proffered reasons are factually baseless, were not the actual motivation for the discharge in question, or were insufficient to motivate the discharge.'" Id. (quoting Testerman v. EDS Tech. Prods. Corp., 98 F.3d 297, 303 (7th Cir. 1996)). "Whether a court finds sufficient evidence to create an issue of material fact depends upon the entire record." Id. "When a plaintiff uses the indirect method of proof, no one piece of evidence need support a finding of age discrimination, but rather the court must take the facts as a whole." Huff v. UARCO, Inc., 122 F.3d 374, 385 (7th Cir.1997) (citation omitted). Weyneth cannot show that Micromatic's justification for his termination is

7

pretextual.

Weyneth cannot dispute that Micromatic's business was reduced at the time of his lay off, that four other employees from other departments were laid off along with him or that more than a dozen employees were laid off in the latter half of calendar year 2001. Yet, Weyneth claims that there was no need to lay off an employee from the Quality Control department, and that he should not have been chosen over other employees in the Quality Control department. However, Weyneth offers no evidence to support this argument, and such unsupported arguments are improper at the summary judgment stage. See Thomas, 328 F.3d at 893-94 ("Conclusory allegations alone cannot defeat a motion for summary judgment."). Weyneth simply second guesses Micromatic's business judgment. Although Weyneth might like this court to review the merits of Micromatic's business decisions, "this court does not sit as a super-personnel department that reexamines an entity's business decisions." Dale v. Chicago Tribune Co., 797 F.2d 458, 464 (7th Cir. 1986).

While it is undisputed that Weyneth had more experience and performed better as an inspector than the other employees in the Quality Control department, it is also undisputed that he lacked experience in other departments of Micromatic's factory. Kolpa performed various other duties in the factory, including sorting, aside from her duties as an inspector. Korycki performed various other duties in the factory, including painting and maintenance, aside from his duties as an inspector. Lastly, Freeman performed various other duties in the factory, including sorting and filing paperwork, aside from her duties as an inspector. "On the issue of pretext our only concern is the honesty of the employer's explanation, O'Conner v. DePaul Univ., 123 F.3d 665, 671 (7th Cir. 1997), and Weyneth has not cast doubt on the honesty of Micromatic's reason for his termination.

The harsh reality is that Micromatic simply made a decision to terminate one employee in

the Quality Control department and viewed Weyneth as less valuable than other employees. As Prociuk stated in his affidavit: "I chose Ernst Weyneth because all the other employees in quality control had also had the experience and training in working in other parts of the factory, and, as a result, were more flexible." Def.'s LR 56.1(a)(3) Statement, Ex. Prociuk Aff. ¶ 7. As the Seventh Circuit has stated, in RIF cases "we deal with small gradations, with an employer's subjective comparison of one employee to another, and it is incumbent upon us to remember that what is at issue is not the wisdom of an employer's decision, but the genuineness of the employer's motives." Testerman, 98 F.3d at 304. Weyneth has not cast doubt of the genuineness of Micromatic's motives in selecting him for lay off.

Furthermore, in Weyneth's Local Rule 56.1(b)(3)(B) Statement he states: ¶ 119 "Walter Prociuk decided to terminate [Weyneth] because he was a single purpose inspector. That was the only reason for choosing [Weyneth] over the other inspectors." Pl.'s LR 56.1(b)(3)(B) Statement ¶ 119. This statement belies any argument that Micromatic would not have terminated Weyneth but for his age. See Testerman, 98 F.3d at 301 (indicating that "[i]n looking for discriminatory motive under the ADEA, the relevant inquiry is whether age 'tipped the balance,' that is, whether age was a 'but for' cause of the decision to fire the plaintiff").

Therefore, Weyneth has failed to show that Micromatic's justification for its decision to terminate his employment was factually baseless, was not the actual motivation for the termination, or was insufficient to motivate the termination. See Schuster, 327 F.3d at 574. As such, Weyneth fails to show that Micromatic's stated reason for his termination was pretextual, and his claim under the ADEA fails.

## IV. CONCLUSION

For the reasons stated above, the court grants Micromatic's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.

IT IS SO ORDERED.

ENTER:

*Charles R Norgle*

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: 5-13-04